JAMES DAVID WILLIAMS,

        Plaintiff,

    v.

SCOTT KERNAN, et al.,

        Defendants.

Case No. 17-cv-03538-YGR (PR)

**ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING OTHER PENDING MOTIONS**

## I.  INTRODUCTION

Plaintiff James David Williams, a state prisoner currently incarcerated at the Correctional Training Facility ("CTF"), filed this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated by the following prison officials based on their involvement in Plaintiff's unclothed body search on June 29, 2016: California Department of Corrections and Rehabilitation ("CDCR") Secretary Scott Kernan; CTF Warden S. Hatton; Investigative Services Unit ("ISU") Lieutenant V. Khan; ISU Sergeant S. Kelley[1]; ISU Correctional Officers Z. Brown and Officer S. Patterson; CTF Appeals Coordinator J. Truett; and two Doe Defendants.  Plaintiff seeks injunctive relief and monetary damages.

The parties are presently before the Court on Defendants' Motion to Dismiss and Motion for Summary Judgment.  Dkt. 14.  Plaintiff has filed an opposition to Defendants' motion, and Defendants have filed a reply.  Dkts. 25, 27.  The parties have also filed other pending motions which will all be addressed below, including: Defendants' Administrative Motion to File Confidential Documents Under Seal (dkt. 15), which Plaintiff opposes (dkt. 16); Plaintiff's request for leave to amend the original complaint (dkt. 16), which Defendants oppose (dkt. 19); Plaintiff's "Motion to Request Service of this Action to Additional Defendants" (dkt. 17); and Plaintiff's motion for appointment of counsel (dkt. 21).

Having read and considered the papers submitted and being fully informed, the Court

---

[1] Defendant Kelley's name was initially misspelled as "Kelly."  The Court has been informed that the correct spelling is "Kelley."  Dkt. 19 at 1

hereby GRANTS Defendants' motion to dismiss and motion for summary judgment,[2] GRANTS Plaintiff's motion for leave to amend the original complaint, and addresses the remaining pending motions.

## II.    FACTUAL BACKGROUND[3]

### A.    The Parties

At the time of the events set forth in his complaint, Plaintiff was a state prisoner who was incarcerated at CTF, which is where he is still currently incarcerated. *See* Dkt. 1 at 1. Also during the time frame at issue, the following Defendants were employed by the CDCR and CTF: CDCR Secretary Kernan; CTF Warden Hatton; CTF Appeals Coordinator Truett; ISU Lieutenant Khan; ISU Sergeant Kelley; and ISU Officers Brown (a male officer) and Patterson (a female officer).

### B.    Plaintiff's Version

The following background relating to Plaintiff's Eighth Amendment claim is taken from the Court's January 5, 2018 Order:

> Plaintiff claims that on June 29, 2016, Defendants Brown and Patterson, along with two unidentified prison officials from the Investigative Services Unit ("I.S.U.") (i.e., "John Doe (I.S.U.)" and "unidentified Supervising Sgt. John Doe"), subjected him to "cruel and unusual sexual invasion of privacy [and] sexual misconduct" when they forced him to do an "open-public full body strip search . . . [t]hen a rectum/cavity search.[4]" Dkt. 1 at 3. Furthermore,

---

[2] In a separate and concurrently filed written Order, the Court directs Defendants to file a motion for summary judgment or other dispositive motion on Plaintiff's Fourth and Fourteenth Amendment claims.

[3] This Order contains a few acronyms. Here, in one place, they are:

| | |
|---|---|
| CDCR | California Department of Corrections and Rehabilitation |
| CTF | California Training Facility |
| ISU | Investigative Services Unit |
| PREA | Prison Rape Elimination Act |
| STG | Security Threat Group |

[4] Plaintiff had initially alleged that Defendants ordered him to submit to a "rectum/cavity search." Dkt. 1 at 3. However, Defendants clarify that Plaintiff was not subject to a cavity search, which would have been conducted in a medical setting under the supervision of a doctor. *See* Brown. Decl. ¶ 9; *see also* Cal. Code Regs. tit. 15, § 3287(b)(5). In his declaration, Plaintiff again alleges that he was subjected to a "Cavity Search." *See* Pl. Decl. ¶ 6. In their reply, Defendants argue that Plaintiff's aforementioned allegation is "misleading" because the "unclothed body search was strictly a visual inspection of [Plaintiff's] body." Dkt. 27 at 5. Defendants again clarify that no "cavity search" was performed because such a search "may only be performed by

Defendant Patterson, who is a female officer, was present during the search and took "sexually suggestive photographs" of Plaintiff while he was partially nude. *Id.* Plaintiff also claims that Defendant Brown laughed at him during the cavity search. *Id.* at 5. Plaintiff adds that Defendants did not explain "the purpose of the photos . . . nor what authorize[d] them" to take such photos. *Id.*

Plaintiff claims that after he reported the incident, an investigation was conducted by Defendants Khan, Truett, and Kell[e]y. (*Id.* at 4.) Plaintiff claims that their investigation was "flawed" and that they "covered up the conduct that occurred." (*Id.*)

Plaintiff claims that Defendant Hatton "failed to correct this underground conduct of I.S.U. staff, and continues to allow this treatment to occur . . . ." *Id.* Plaintiff adds that Defendant Kernan "denied correction and training of these rouge actions of CTF Staff . . . violating Plaintiff [by] continuing to use female staff to conduct unsecure, non-emergency strip searches of male inmates (cross-gender)." *Id.*

Dkt. 7 at 2 (brackets and footnote added). Plaintiff claims that such treatment of inmates has violated his constitutional rights and that female correctional officers are still being allowed to take partially nude photographs of male inmates. *Id.* (citing Dkt. 1 at 6). Thus, upon conducting an initial review of the complaint, the Court determined that, liberally construed, Plaintiff's allegations were sufficient to state cognizable claims for the violation of his rights under the Eighth Amendment. *Id.* (citing *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc); *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922-25 (9th Cir. 2017)). The Court further noted that in his complaint Plaintiff had named two Doe Defendants— "yet to be identified [H]ispanic male, John Doe (I.S.U.)" and "unidentified Supervising Sgt. John Doe"—whose names he intended to learn through discovery. *See* Dkt. 1 at 3. The Court dismissed his claims against these Doe Defendants without prejudice to move to file an amended complaint to add them as named defendants. *Id.* at 3 (citing *Brass v. County of Los Angeles*, 328 F.3d 1192, 1195-98 (9th Cir. 2003)). As explained below, Plaintiff is now attempting to do so by requesting to add two named Defendants to this action: ISU Correctional Sergeant S. Rodriguez and ISU Correctional Officer R. Salas, who were also employed by CTF during the time frame at

United States District Court
Northern District of California

medical professionals when there is a need to extricate items concealed in the inmates' body cavities." *Id.* at 6. Nothing in the record indicates that there was any need to extricate such items from Plaintiff's body cavity. Plaintiff does not dispute Defendants' clarification. Therefore, the Court need not address Plaintiff's allegations relating to any "rectum/cavity search."

issue. *See* Dkts. 16, 17. The Court will address Plaintiff's request later on in this Order.

## C. Defendants' Version

In the instant dispositive motion, Defendants have elaborated more on the factual background of Plaintiff's claim, and the Court includes it as Defendants' version below.

### [] THE BODY SEARCH AND DISCOVERY OF CONTRABAND IN THE CELL.

The Investigative Services Unit (ISU) received a tip that Williams and his cellmate [inmate Jason Smith[5]] might be in possession of cellular phones. (Brown Decl. ¶ 4.) On June 29, 2016, the date of the events alleged in this complaint, Defendant Brown—who is an ISU officer—arrived at Williams's housing unit shortly after 6:00 a.m. (*Id.*) Williams and his cellmate asked to exit the cell. (*Id.* ¶ 5.) Brown's colleague performed a clothed body search of Williams and his cellmate, which consisted of a pat-down and the use of a handheld metal detector.

Although the clothed body search with a handheld metal detector had negative results for contraband, Brown was not convinced that Williams did not conceal other contraband on his person because the clothed body search could only detect metal objects, but not drugs, for example. (*Id.* ¶ 6.) Brown and his colleague, officer Salas, escorted Williams to the housing unit's shower area for the purpose of performing an unclothed body search. (*Id.*) Such searches are routinely performed in shower areas because the showers are private, more spacious than cells, and because no other inmates have a direct view inside the shower area, as they would of a cell. (*Id.* ¶ 7.) And unclothed body searches are generally conducted early in the morning to limit the amount of disturbance on the housing unit's programming and operations. (*Id.* ¶ 4.) Also, early-morning times are favored because most inmates, except for a few who have work assignments, are inside their cells until shortly after 7:00 a.m., when the morning release for breakfast occurs. (*Id.*)

The unclothed body search that Brown performed was strictly visual and lasted approximately one minute. (*Id.* ¶ 8.) The search did not include any physical touching. (*Id.* ¶ 9.) The body search consisted

---

[5] Inmate Smith, the other inmate housed in Plaintiff's cell (F Wing cell number 331), *see* Brown Decl., Ex. A, filed a civil rights action in this Court, in which he also alleges that his Eighth Amendment rights were violated by the same prison officials based on their involvement in a similar unclothed body search on June 29, 2016. *See Smith v. Hatton*, Case No. C 17-04030 BLF (PR). On November 15, 2018, the Honorable Beth Labson Freeman granted Defendants' motion to dismiss the Eighth Amendment claim against Defendants Khan and Kelley, and she also granted their motion for summary judgment on the Eighth Amendment claim against Defendants Brown, Patterson, Rodriguez, and Salas on the merits and based on qualified immunity. *See* Dkt. 67 of Case No. C 17-04030 BLF (PR). Judge Freeman has also dismissed the Eighth Amendment claim against Defendant Hatton. *See* Dkt. 70 of Case No. C 17-04030 BLF (PR). Inmate Smith's case is still pending as to his Fourth and Fourteenth Amendment claims against Defendants Brown, Patterson, Rodriguez, and Salas. *See* Dkt. 66 of Case No. C 17-04030 BLF (PR).

only of a visual inspection of Williams's hair, mouth, armpits, arms, palms, and feet. (*Id*. ¶ 8.) Williams was also required to bend forward at the waist, spread his buttocks, and cough several times. (*Id*.) This was necessary to ensure that he did not conceal contraband in his anal cavity, which is how inmates often conceal drugs and other forbidden items. (*Id*.) Overall, such unclothed body searches are routinely done as part of inspections of inmates, and they may be conducted often times on an unannounced and random basis. (*Id*. ¶ 10.) And on that day, several other cell and body searches were performed, including a body search of Williams's cellmate. (*Id*. ¶ 12.)

Reasonable steps were taken to ensure Williams's privacy while he disrobed and during the search. (*Id*. ¶ 10.) Brown and his colleague, Salas, were alone with Williams in the shower area and they stood around him and blocked the shower area opening, thus guaranteeing that any possible onlookers—if any would have walked by that early in the morning—could not have a direct line of view or observe the activity inside the shower area. (*Id*.) The search was conducted in a professional manner and Brown did not embarrass, harass or laugh at Williams, or ma[k]e any derogatory remarks, touching, gesturing, or comment that would have been construed as sexual. (*Id*.) A cavity search was not performed. (*Id*. ¶ 9.) Cavity searches may only be conducted in a medical setting under the direct supervision of a physician. (*Id*.)

Thereafter Brown proceeded to Williams's cell. (*Id*. ¶ 12.) The cell search confirmed the information that ISU had received, as two cellphones and two chargers were found hidden behind and inside a mattress. (*Id*.) The cellphones had Internet, camera, and GPS capabilities. (*Id*.) Brown confiscated the items as contraband. (*Id*.)

**[] PATTERSON'S INVOLVEMENT IN THE EVENTS ALLEGED AND HER ROLE AS A SECURITY THREAT GROUP INVESTIGATOR.**

Like Brown, Patterson is an ISU officer at CTF. (Patterson Decl. ¶ 4.) Patterson is assigned to Investigations and she investigates inmates for possession and introduction of contraband into the prison, and any criminal activity within the institution. (*Id*.) More importantly, she is tasked with investigating and documenting inmates' Security Threat Group (STG) status. (*Id*.)

STG refers to any group of offenders CTF reasonably believes poses a threat to the physical safety of other inmates and staff due to the very nature of the groups. (*Id*. ¶ 5.) Some of these groups at CTF include the Bloods, Crips, Mexican Mafia, Aryan Brotherhood, and Black Guerilla Family. (*Id*. ¶ 5.) One of the indicia of STG membership is the use of gang tattoos. (*Id*. ¶ 6.) ISU officers take photographs of inmates and their tattoos to document their STG status. (*Id*. ¶ 10.) For Patterson, this is an essential part of her job responsibilities as an investigator. (*Id*.) These photographs are for the sole internal use of ISU. (*Id*. ¶ 11.)

At the conclusion of the visual unclothed body search on June 29, 2016, Williams was ordered to put on his underwear briefs, which he did. (Brown Decl. ¶ 12.) It was only at that point that Brown called

Patterson to enter the showers area and photograph Williams. (*Id*.) Patterson was not present during the unclothed body search and she would not have had a direct line of sight or any other opportunity to observe Williams while he was nude during the search because Brown and his colleague blocked the shower opening. (*Id*.; Patterson Decl. ¶ 8.) Although Patterson was not the only ISU officer able to photograph inmates, she was assigned to take photographs on that particular day. (Patterson Decl. ¶ 10.)

Patterson took several photographs, including four default shots of Williams's front, back, left side, and right side. (*Id*. ¶ 12.) Some of the photographs also include close-up shots of Williams's tattoo on his back. (*Id*.) Williams wore white underwear briefs in all photographs and the only exposed areas of his body were his arms, legs, and torso. (*Id*.) Williams's genitals and private areas were not captured by the photos or otherwise exposed to Patterson at any time during her taking of the photographs, or before. (*Id*.) Williams was not nude. (*Id*.) Patterson's interaction with Williams was professional, uneventful, and without incident. (*Id*. ¶ 13.) She likely gave Williams verbal commands, but in keeping with the ethical code of the job, she did not touch him or make any sexual, derogatory, or humiliating remarks. (*Id*.)

Williams complained that copies of the photographs were never provided to him. (Compl. Ex. A at 11.) But there is no law that holds that the refusal to provide such photographs is a constitutional violation. And such photographs are for the sole internal use of the Investigative Services Unit because they contain sensitive information that, if disseminated intentionally or inadvertently to the prison population, could expose Williams to assault and harassment from other inmates. (Patterson Decl. ¶ 11.) Nevertheless, at the request of the Attorney General's Office, arrangements were made at the prison for Williams to view copies of all the photographs that were taken of him on June 29, 2016, so that he might satisfy himself that the photographs are not sexually suggestive. (Galvan Decl. ¶ 5.) [FN 2]

[FN 2:] E. Galvan's declaration was submitted in support of Defendants' Notice of Motion and Administrative Motion to File Confidential Documents Under Seal. Exhibit A to Galvan's declaration contains the seven photographs that were taken of Williams on June 29, 2016.

Williams was issued a pass to meet the Litigation Coordinator of the Correctional Training Facility on April 11, 2018. (*Id*.) Williams viewed the photographs without any incident. (*Id*. ¶ 6.) He requested copies of the photographs, but his request was denied for the reasons stated above. (*Id*.) No other photographs were taken of Williams on June 29, 2016. (*Id*. ¶ 4.)

## [] WILLIAMS'S ADMINISTRATIVE GRIEVANCE.

### A. Truett's Role and the Processing of the Grievance.

On July 12, 2016, Williams filed administrative grievance CTF-S-16-01503 about the events surrounding the unclothed body search.

(Khan Decl. ¶ 5, Ex. A.)  The grievance was received in the Appeals Office on July 14, 2016, where Truett—the Appeals Coordinator at CTF—screened the form to ensure compliance with the filing requirements, assigned a number to the grievance, and logged it in the database.  (*Id.*; Truett Decl. ¶ 7.)  The Appeals Office receives hundreds of inmate grievances each month and the disposition of grievances follows a routine, consistent, and overt process consistent with applicable regulations.  (Truett Decl. ¶ 11.)

Part of Truett's job responsibilities include receiving, logging, routing, and monitoring the disposition of inmate grievances.  (*Id.* ¶ 1.)  Upon completing the screening process, Truett sent Williams two letters.  One letter was a standard screening letter to inform Williams that the Appeals Office had received his grievance and that it would be processed according to Section 3084.9(i) of Title 15 of the California Code of Regulations, because it contained allegations against staff members.  (*Id.* ¶ 8, Ex. A.)  The other document sent to Williams was a memorandum informing him that the complexity of the decision and action would require a delay in the review of the grievance, and provided him with an estimated completion date.  (*Id.*)  Per regulation, grievances containing allegations of staff misconduct are presented to the hiring authority or a designee, hence why Warden Hatton was a co-signatory on the memorandum and approved the delay in reviewing of the appeal.  (*Id.* ¶ 9.)

But aside from performing the initial screening, processing the application, and presenting it to the Warden, Truett was not involved at any stage of the reviewing process or any of the subsequent investigations of Williams's allegations.  (*Id.* ¶ 10.)  Truett has no control over how any administrative grievances are reviewed and investigated, whether such grievances pertain to alleged staff misconduct or not.  (*Id.*)  Further, she cannot influence the outcome and disposition of administrative grievances at the prison level.  (*Id.*, ¶ 12.)  Nor can she influence the decision at the Third Level of Review, which is separate and independent from the institutional levels of review at the prison.  (*Id.* ¶ 12.)  In any event, the Third Level of Review found that Williams's allegations were appropriately reviewed and evaluated by the prison staff.  (*Id.*)

Truett has not conspired with anyone to deny Williams's grievance and his grievance was not singled out.  (*Id.* ¶ 11.)  There was no collusion between staff members or any attempt to conceal staff misconduct.  (*Id.*)  Although Williams did not obtain the relief requested and the outcome for which he hoped, it does not mean that staff members conspired against him.  (*Id.*)  And most important, Truett was not involved in any of the events that allegedly occurred on June 29, 2016.  (*Id.* ¶ 10.)

**B. Khan's Review of the Grievance and His Conclusions.**

Defendant Khan is an ISU lieutenant.  (Khan Decl. ¶ 1.)  Khan was not personally involved nor was present during the events alleged in the complaint.  (*Id.* ¶ 14.)  But Khan interviewed Williams in connection with the allegations contained in his administrative grievance during the Second Level Review of the grievance.  (*Id.* ¶¶ 5-6.)  In that grievance, Williams alleged that Defendant Brown

and "assisting ISU staff" violated his privacy. (*Id.* Ex. A.) The administrative grievance made no mention of Defendants Kernan, Hatton, Khan, Kelley, and Truett, and nothing was alleged against them. (*See* Ex. A.)

During the interview, Williams expressed his disagreement with the unclothed body search and felt it was unnecessary because he had already been given a clothed body search with a metal detector, with negative results for contraband. (*Id.* ¶ 7.) Williams did not say that Defendant Patterson was present during the unclothed body search, but he recalled that Patterson photographed him when he had his boxers on. (*Id.*) He further stated that none of the officers touched him during the search. (*Id.*)

Also during the interview, Williams merely reiterated the contents of his administrative grievance and offered no new information. (*Id.* ¶ 8.) And he did not pose any questions regarding the identification and names of ISU staff who might have been unknown to him at that time, or else Khan would have provided him with that information. (*Id.*) In addition to the interview with Williams, Khan conducted other interviews and reviewed the photographs that Patterson took. (*Id.* ¶ 9.) The photographs were not nude photos. (*Id.* ¶ 10.) Further, the photographs were taken in the private area of the showers where no onlookers could have observed Williams. (*Id.* ¶ 11.) And in any event, inmates in the showers are often nude or partially nude when they shower together, so even if other inmates could have observed Williams during the search, that would not have been any different than other inmates showering next to him on any other given day. (*Id.*) Khan also reviewed a list of non-confidential enemies to ensure that Williams had no enemy concerns at the prison, as well as a CDC-128-B Form dated August 2, 2008. (*Id.* ¶ 9.) The CDC-128-B form documented a correctional officer's interview with Williams during his period of incarceration at a different institution, when Williams admitted to being an associate of a Crip gang. (*Id.*) The form also documented an unclothed body search which revealed a marijuana leaf tattoo on Williams's back as a depiction of his gang affiliation. (*Id.*)

Khan's investigation and review of Williams's grievance revealed no evidence that Williams was harassed, humiliated, or that any sexual misconduct occurred by any officers or staff present that day, and that no CDCR policy was violated. (*Id.* ¶ 12.) Moreover, the third and final level of review (1) found that Khan had appropriately reviewed and evaluated Williams's allegations, and (2) agreed with Williams's findings and declared that no change or modification of his decision was warranted. (*Id.*) Finally, Khan was not obligated to interview every witness that Williams might have indicated to him, as inmates are not allowed to decide how investigations are conducted. (*Id.* ¶ 13.) Instead, officers use their training and experience to gauge the credibility of the allegations and resolve them effectively in a manner that weeds out frivolous or unsubstantiated allegations. (*Id.*)

**[] WILLIAMS'S PREA COMPLAINT AND KELLEY'S INVESTIGATION.**

Williams was identified as a potential victim of staff sexual misconduct on July 12, 2016, when he filed his administrative grievance. (Kelley Decl. ¶ 6.) Kelley is an ISU sergeant and did not personally or physically participate in the events that gave rise to Williams's allegations. (*Id.* ¶ 3, 12.) Nor was he involved in the investigation and review of Williams's administrative grievance. (*Id.* ¶ 6.)

Aside and apart from Williams's administrative grievance, a Prison Rape Elimination Act (PREA) review was initiated. (*Id.*) PREA investigations are conducted whenever inmates complain that they are sexually abused by staff or other inmates. (*Id.*) PREA-related documents are confidential due to the sensitive nature of the content and CDCR's overarching concern for the protection of victims of sexual abuse. (*Id.*) PREA investigations include the monitoring of inmates for a period of 90 days following their allegations of sexual violence or misconduct, as well as referrals to mental health consultations. (*Id.* ¶ 7.)

Kelley conducted the investigation of Williams's PREA complaint and allegations. (*Id.* ¶ 5.) But because Khan had already interviewed Williams about the same allegations, Kelley did not himself interview Williams to avoid redundancy. (*Id.* ¶ 8.) Instead, Kelley relied on the information conveyed by Williams to Khan. (*Id.*) Altogether, the PREA investigation occurred over the course of several months, from July 2015 through the end of January 2017, when ISU completed the investigation. (*Id.*)

The information obtained during the course of the investigation, coupled with the lack of reliable witnesses and lack of physical and forensic evidence, did not support Williams's allegations. (*Id.* ¶ 9.) Ultimately, Williams's allegations were found to be unsubstantiated and the investigation was closed. (*Id.*, Ex. A.) Kelley was not obligated to interview every witness suggested to him by Williams and an investigation is not rendered "flawed" merely because an inmate disagrees with the outcome. (*Id.* ¶ 12.)

Dkt. 14 at 12-18 (brackets, footnote 2 in original, and footnote 5 added).

## III. DISCUSSION

### A. Pending Motions

#### 1. Plaintiff's Motion to Amend Complaint and Motion for Service of Process

In his original complaint, Plaintiff claimed that, in connection with the unclothed body search on June 29, 2016, his constitutional rights were violated by Defendants Brown and Patterson, along with two unidentified prison officials from ISU, whose identities were initially not known to him. Plaintiff used Doe Defendant monikers for these unidentified officers. After

9

Defendants filed their dispositive motion, Plaintiff filed a motion to amend the complaint to name Defendants Rodriguez and Salas in place of the Doe Defendants. Dkt. 16. Plaintiff also filed a motion for service of process on the aforementioned newly-named Defendants. Dkt. 17. The motion to amend the complaint and motion for service of process are GRANTED. Defendants Rodriguez and Salas are added as Defendants, and the Court orders service of process on these newly-added Defendants.[6]

However, the Court need not wait for such service to take effect or delay its resolution of the pending dispositive motion because the instant motion is based on declarations from Defendants Brown and Patterson and as a result presents a complete picture of these Defendants and the newly-named Defendants' version of the incident. Plaintiff makes no effort to distinguish between the versions that would have been filed by the served Defendants versus the newly-named (and unserved) Defendants, and thus this demonstrates that his briefs in opposition to the dispositive motion were not filed with the understanding that he only needed to address his claims against the served Defendants. The issues having been fully briefed, the Court can proceed and determine whether the served Defendants and newly-named (and unserved) Defendants are entitled to judgment in their favor as to the Eighth Amendment claim. There is no need to delay the resolution of the pending motion by several months so that Defendants Rodriguez and Salas can be served with process, retain counsel (who would probably be the same as counsel for the served Defendants), and file a separate motion for summary judgment that makes an argument and factual presentation identical to the one made by the served Defendants. The most practical approach therefore is to allow Defendants Rodriguez and Salas to be added as Defendants in place of the Doe Defendants, but not to waste the time necessary to have them served with process *prior to* ruling on the pending dispositive motion. Therefore, the Court will resolve the pending dispositive motion below.

---

[6] As mentioned above, the Court will be issuing a separate and concurrently-filed Order addressing still pending Fourth and Fourteenth Amendment claims, and thus service of process on these newly-named Defendants is warranted in order for them to answer to these claims. *See supra* footnote 2.

10

**2.  Defendants' Motion for an Order to File Confidential Documents Under Seal**

In connection with the instant dispositive motion, Defendants seek, in accordance with this District's Civil Local Rules 7-11 and 79-5(b), to file under seal the exhibit attached to the declaration of CTF Litigation Coordinator E. Galvan in support of Defendants' dispositive motion: Confidential Exhibit A.  The Court has considered Defendants' motion, including the confidential documents at issue submitted for *in camera* review, and the declaration of Litigation Coordinator Galvan filed in support of Defendants' sealing request.  Defendants have established that the information they seek to file under seal implicates legitimate safety and security concerns and should be protected from disclosure to Plaintiff and the public.  Accordingly, the Court GRANTS Defendants' motion for administrative relief to file certain documents under seal, and issues certain instructions to the Clerk of the Court relating to these documents, as indicated below.  Dkt. 15.

**B.  Defendants' Motion to Dismiss and Motion for Summary Judgment**

Defendants have filed a motion to dismiss and motion for summary judgment.  Dkt. 14.  In the motion to dismiss, Defendants argue, *inter alia*, that Plaintiff's claims against Defendants in their official capacities are barred, that any claim for punitive damages should be dismissed, that Plaintiff has failed to state a cognizable claim for relief as to Defendants Kernan, Hatton, Khan, Kelley, and Truett, and that Plaintiff failed to exhaust administrative remedies against to Defendants Kernan, Hatton, Khan, Kelley, and Truett.  Defendants also move for summary judgment on the merits and based on qualified immunity.

For the reasons stated below, the Court GRANTS Defendants' motion to dismiss the claims against all Defendants in their official capacities, the claim for punitive damages, and the Eighth Amendment claim against Defendants Kernan, Hatton, Khan, Kelley, and Truett for failure to state a claim.[7]  The Court also GRANTS Defendants' motion for summary judgment on the merits and based on qualified immunity related to the Eighth Amendment claim.[8]  Finally, the

---

[7] Because the Court grants Defendants' motion to dismiss for failure to state a claim as to Defendants Kernan, Hatton, Khan, Kelley, and Truett, the Court need not address Defendants' alternative ground for dismissal for failure to exhaust administrative remedies.

[8] Because the Court is dismissing all claims against Defendants Kernan, Hatton, Khan,

Court will address any remaining pending motions below.

### 1. Motion To Dismiss

#### a. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Failure to state a claim is grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal for failure to state a claim is a ruling on a question of law. *Parks Sch. of Bus., Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Symington*, 51 F.3d at 1484. However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). But a *pro se* pleading must be liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Twombly*, 550 U.S. at 570 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

---

Kelley, and Truett based on Defendants' motion to dismiss, the Court will limit its discussion of Defendants' motion for summary judgment as to the claims against served Defendants Brown and Patterson as well as unserved Defendants Rodriguez and Salas.

### b. Analysis

#### 1) Official Capacity Claims

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. Dkt. 1 at 3.

However, Defendants argue that Plaintiff's claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. Dkt. 14 at 23.

The Eleventh Amendment to the United States Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985) *abrogated on other grounds as noted in Lane v. Pena*, 518 U.S. 187, 198 (1996). Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Eleventh Amendment immunity extends to suits against a state agency, *Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR and California Board of Prison Terms entitled to Eleventh Amendment immunity), and to suits for damages against state officials sued in their official capacities, *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). California has not waived its Eleventh Amendment immunity with respect to claims brought under Section 1983 in federal court. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Therefore, because the CDCR is a state agency, its employees, who are the aforementioned Defendants, sued in their official capacities are immune from suit for monetary damages.

Accordingly, Plaintiff's claims for monetary damages against Defendants in their official capacities are DISMISSED as barred by the Eleventh Amendment.[9] Because it is clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities is without leave to amend. As such, Defendants' motion to dismiss is GRANTED as to all claims against Defendants in their official capacities. Dkt. 14.

---

[9] Eleventh Amendment immunity does not bar Plaintiff's claims against Defendants sued in their individual capacities. *See Graham*, 473 U.S. at 165-66.

### 2) Punitive Damages

Defendants argue that Plaintiff has failed to plead sufficient facts to state claims that "Defendants acted with an evil motive or were recklessly indifferent to [Plaintiff's] rights." Dkt. 14 at 23. The Court agrees. The dismissal of Plaintiff's claim for punitive damages is in order, as punitive damages may be awarded in a Section 1983 suit only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is no indication whatsoever that any of Defendants' alleged wrongdoing rose to this requisite high level of culpability. Accordingly, Plaintiff's claim for punitive damages is DISMISSED. Dkt. 14.

### 3) Failure to State a Claim

The United States Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prison official violates the Eighth Amendment only if two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

A prisoner may state an Eighth Amendment claim under Section 1983 for sexual harassment if the alleged sexual harassment was sufficiently harmful, i.e., a departure from "the evolving standards of decency that mark the progress of a maturing society," and the defendant acted with intent to harm the prisoner. *See Thomas v. District of Columbia*, 887 F. Supp. 1, 3-4 (D.D.C. 1995) (citing *Hudson v. McMillian*, 503 U.S. 1, 6, 8 (1992)) (internal quotations and citation omitted). Sexual assault, coercion, and harassment certainly may violate contemporary standards of decency and cause physical and psychological harm. *See Jordan v. Gardner*, 986 F.2d 1521, 1525-31 (9th Cir. 1993) (en banc).

The Eighth Amendment's prohibition against cruel and unusual punishment may also be violated by certain body searches. *See id.* (emphasizing many female inmates' history of abuse,

"psychological differences between men and women," and intrusive physical nature of search); *cf.*

*Byrd v. Maricopa County Bd. of Supervisors*, 845 F.3d 919, 924 (9th Cir. 2017) (pretrial

detainee's allegation that he alerted prison officials of his discomfort with defendants' policy of

permitting female guards to regularly view his bathroom and shower use from 4-5 feet away

because of detainee's past sexual abuse was sufficient to state a claim for relief against cruel and

unusual punishment).

Here, Plaintiff alleges that Defendants Kelley, Kahn, and Truett "conducted a flawed

investigation" of Plaintiff's accusations against Defendants Brown and Patterson and "covered up

the conduct that occurred." Dkt. 1 at 5. Plaintiff further alleges that Defendant Hatton failed to

correct the underground conduct of ISU staff, and continues to allow this treatment to occur on

inmates." *Id.* Finally, Plaintiff claims that Defendant Kernan "denied correction and training of

these rogue actions if CTF staff violating Plaintiff and continuing to use female staff to conduct

unsecure, non-emergency strip searches of male inmates . . . . *Id.*

Liability may be imposed on an individual defendant under Section 1983 if the plaintiff

can show that the defendant's actions both actually and proximately caused the deprivation of a

federally protected right. *Lemire v. Cal. Dept. of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir.

2013). However, Plaintiff does not allege that Defendants Khan, Kelley, and Truett were involved

in or proximately caused Plaintiff's unclothed body search. Plaintiff also does not allege that

these Defendants engaged in sexual harassment against him. Instead, Plaintiff's complaint alleges

that Defendants Kelley, Khan, and Truett were only involved as investigators into the

circumstances of the unclothed body search *after* the search had already occurred. To the extent

that Plaintiff is suing Defendants Khan and Truett based on their involvement in handling the

relevant grievance relating to the claims in this action, there is no constitutional right to a prison

administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.

2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (order) ("There is no legitimate claim of

entitlement to a grievance procedure."). There is also no right to a response or any particular

action. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("When the claim

underlying the administrative grievance involves a constitutional right, the prisoner's right to

15

1  petition the government for redress is the right of access to the courts, which is not compromised

2  by the prison's refusal to entertain his grievance.").

3      Therefore, the Court finds that Plaintiff has not stated a cognizable Eighth Amendment

4  claim against Defendants Kelley, Khan, and Truett, and Defendants' motion to dismiss this claim

5  against Defendants Kelley, Khan, and Truett is GRANTED.  While leave to amend should

6  generally be given to a *pro se* plaintiff, leave is not required when it is absolutely clear that the

7  deficiencies could not be overcome by amendment.  *See Eldridge v. Block*, 832 F.2d 1132, 1135-

8  36 (9th Cir. 1987).  Here, based on these facts, no amendment could overcome the lack of a legal

9  basis for liability against Defendants Kelley, Khan, and Truett.  Plaintiff's Eighth Amendment

10  claim against Defendants Kelley, Khan, and Truett are DISMISSED without leave to amend.

11      With respect to Defendants Kernan and Hatton, Plaintiff does not allege that these

12  Defendants were involved in/proximately caused the unclothed body search, nor that these

13  Defendants engaged in sexual harassment against him.  Plaintiff alleges only that Defendant

14  Hatton failed to prohibit female correctional officers from conducting strip searches and taking

15  partially nude photographs of male inmates, and that Defendant Kernan failed to train his

16  subordinates who allow female staff to participate in the aforementioned actions.  Dkt. 1 at 5.

17  Based on these facts, Plaintiff has not stated a cognizable Eighth Amendment claim against

18  Defendants Hatton and Kernan.  Defendants' motion to dismiss the Eighth Amendment claim

19  against these Defendants is GRANTED.  However, this dismissal is with leave to amend.  A

20  supervisor may be liable under Section 1983 upon a showing of (1) personal involvement in the

21  constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful

22  conduct and the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir.

23  2012).  A supervisor may also be liable if there is evidence of "a policy so deficient that the policy

24  itself is a repudiation of constitutional rights and is the moving force of the constitutional

25  violation."  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc),

26  *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).  It is insufficient for a

27  plaintiff only to allege that supervisors knew about a constitutional violation and that they

28  generally created policies and procedures that led to the violation, without alleging "a *specific*

United States District Court
Northern District of California

policy" or "a *specific* event" implemented or instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original). Here, Plaintiff has not proffered any facts from which it can be inferred that Defendants Hatton and Kernan knew about any constitutional violation, or that these Defendants created a specific policy or procedure which led to the alleged violation.

It is not beyond doubt, however, that Plaintiff could provide a set of facts in support of a claim against Defendants Hatton and Kernan which would entitle Plaintiff to relief. Thus, the claim against Defendants Hatton and Kernan is DISMISSED with leave to amend to allow Plaintiff an opportunity to provide more facts to support a cognizable claim for relief against these Defendants.

In sum, Defendants' motion to dismiss is GRANTED as to Plaintiff's Eighth Amendment claim against Defendants Khan, Kelley, and Truett, and all claims against these Defendants are DISMISSED without leave to amend. Meanwhile, as explained above, Plaintiff has not stated a cognizable Eighth Amendment claim against Defendants Hatton and Kernan, and therefore Defendants' motion to dismiss the Eighth Amendment claim against these Defendants is GRANTED. However, the Eighth Amendment claim against Defendants Hatton and Kernan is dismissed with leave to amend to allow Plaintiff an opportunity to provide more facts to support a cognizable claim for relief against these Defendants, as further directed below.

### 2. Motion for Summary Judgment

#### a. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). The court is only concerned with disputes over material facts and "[f]actual disputes

17

that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of their motion for summary judgment, Defendants Patterson, Brown, Kelley, Khan and Truett have submitted declarations and attached exhibits, including copies of the grievance responses and the Rules Violation Report related to the June 29, 2016 incident at issue. Dkts. 14-2, 14-3, 14-4, 14-5, 14-6; Dkt. 14-3 at 6; Dkt. 14-5 at 6-9; Dkt. 14-6 at 6-16. Attached to Defendant Kelley's Declaration is a copy of the "general chrono regarding the staff sexual misconduct allegation log number CTF-PREA-16-07-019." Dkt. 14-4 at 6. Because the aforementioned documents have been properly authenticated pursuant to Federal Rule of Evidence 803(6), the Court will consider these documents in connection with Defendants' motion for summary judgment. In addition, Defendants have submitted Litigation Coordinator Galvan's declaration and copies of the photographs taken of Plaintiff, which the Court has reviewed and ordered to be filed under seal.

Plaintiff has verified his complaint and declaration[10] in support of his opposition by

---

[10] Defendants have filed an objection to Plaintiff's declaration supporting his opposition based on several grounds, including that certain paragraphs in his declaration "make speculative and conclusory allegations that lack any foundational and evidentiary support, and are irrelevant, in violation of Civil Local Rule 7-5 and Federal Rules of Evidence 402, 602, and 701" and also that they "are argumentative, in violation of Civil Local Rule 7-5." Dkt. 27 at 16-17. The Court notes Defendants' objection and stresses that it only considers Plaintiff's allegations in his declaration to the extent such allegations are based on his personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). Further, the Court may, in this Order, refer to Plaintiff's verified declaration in support of his opposition as his "declaration/opposition" or cite to it as "Pl. Decl."

signing them under penalty of perjury.[11]  Dkt. 1 at 3; Dkt. 20-1 at 9.  However, Plaintiff has not

verified his opposition or his "Statement of Disputed Factual Issues Re: Opposition to

Defendant[s'] Motion to Dismiss, Motion for Summary Judgment" because he failed to sign either

under penalty of perjury.  *See* Dkts. 20, 20-2.  The Court may treat the allegations in the verified

complaint and declaration as opposing affidavits to the extent such allegations are based on

Plaintiff's personal knowledge and set forth specific facts admissible in evidence.  *See Schroeder*

*v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating a plaintiff's verified

complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C.

§ 1746, he stated under penalty of perjury that contents were true and correct, and allegations were

not based purely on his belief but on his personal knowledge).

### b.  Analysis of Merits

As mentioned above, Plaintiff claims that on June 29, 2016, Defendants Brown and

Patterson as well as the two Doe Defendants (Defendants Rodriguez and Salas) subjected him to

"cruel and unusual sexual invasion of privacy [and] sexual misconduct" when they forced him to

be undergo to an unclothed body search.  Dkt. 1 at 3.  Furthermore, Defendant Patterson, who is a

female officer, was present during the search and took "sexually suggestive photographs" of

Plaintiff while he was partially nude.  *Id.*  Plaintiff also claims that Defendant Brown laughed at

him during the search.  *Id.* at 5.  Plaintiff claims that such treatment of inmates has violated his

---

[11] Also attached in support of Plaintiff's complaint and opposition are the grievance responses that are mostly similar to those attached to Defendants Khan's and Truett's declarations. *See* Dkt. 1, Ex. A; Dkt. 14-5 at 6-9; Dkt. 14-6 at 6-16.  As these documents are evidence already considered in connection with the summary judgment motion, the Court will also consider the same documents submitted by Plaintiff.  Plaintiff has also submitted various CDCR Operation Manual procedures relating to searches as well as Defendants' declarations and responses to interrogatories, to which Defendants do not object.  Pl. Decl., Exs. C1-C2, D1, E1-E2, F1-F3. Also submitted by Plaintiff are various exhibits to which Defendants have objected to as "irrelevant and confusing or misleading," including: a grievance relating to a disciplinary action stemming from Plaintiff being found guilty in possession of a cellphone (Pl. Decl., Ex. A2); documents relating to the communal shower, Plaintiff's tattoos, Defendant Kahn's confirmation as an Institution Gang Investigator, Inmate M. Barss's grievance relating to June 5, 2018 "Litigation Clarification," and a CDCR Form 22 filed by Plaintiff relating to whether there was a 128-B Chrono filed on June 29, 2016 (Pl. Decl., Ex. B1-B5); and Operations Procedures relating to "Temporary Holding Cells" (Pl. Decl., Ex. D2).  The Court notes Defendants' objections and stresses that it only considers *relevant* evidence that have been properly authenticated pursuant to Federal Rule of Evidence 803(6).

United States District Court
Northern District of California

constitutional rights and that female correctional officers are still being allowed to take partially nude photographs of male inmates. *Id.* at 6. In essence, Plaintiff claims that Defendants sexually harassed him by subjecting him to an unclothed body search as well as by allowing a female correctional officer to take partially nude photographs of him, and that they did so to deliberately embarrassed and humiliated him. Based on these allegations, the Court found that Plaintiff stated a cognizable claim that the aforementioned Defendants violated Plaintiff's Eighth Amendment to be free from cruel and unusual punishment.

As mentioned above, the Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *Hudson*, 503 U.S. at 8. Courts considering a prisoner's Eighth Amendment claim must ask: (1) if the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Id.* at 8 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A prisoner may state an Eighth Amendment claim for sexual harassment if the alleged harassment was sufficiently harmful, and the defendant acted with intent to harm the prisoner. *Thomas*, 887 F. Supp. at 3-4 (citing *Hudson*, 503 U.S. at 8). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, even in the absence of significant injury. *Hudson*, 503 U.S. at 9. And, as explained above, sexual assault, coercion, and harassment certainly may violate contemporary standards of decency and cause physical and psychological harm. *See Jordan*, 986 F.2d at 1525-31.

Not every malevolent touch by a prison guard or official, however, gives rise to an Eighth Amendment violation—the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of force. *Hudson*, 503 U.S. at 9-10; *Watison v. Carter*, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (no Eighth Amendment violation against officer who was alleged to have rubbed his thigh against plaintiff's thigh while plaintiff was on toilet and to have begun smiling before leaving cell laughing); *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (no Eighth Amendment violation where employees briefly touched inmate's buttocks with apparent intent to embarrass him). A prisoner must therefore establish that the alleged sexual harassment was egregious, pervasive, and/or

widespread in order to state an Eighth Amendment claim. *Compare Jordan*, 986 F.2d at 1525-31 (prison policy requiring male guards to conduct body searches on female prisoners inflicted pain sufficient to violate the Eighth Amendment) *and Watson v. Jones*, 980 F.2d 1165, 1165-66 (8th Cir. 1992) (finding Eighth Amendment violation where correctional officer sexually harassed two inmates on almost daily basis for two months by conducting deliberate examination of genitalia and anus) *with Green v. Thompson*, No. C 10-5721 WHA (PR), 2013 WL 550621, *2 (N.D. Cal. Feb. 12, 2013) (granting defendants' motion for summary judgment on prisoner's Eighth Amendment claim that over the course of three weeks and between one and three times, prison guard grabbed prisoner's buttocks and testicles, and made sexual comments to prisoner because it did not rise to the level of constitutional violation). In comparison, mere verbal sexual harassment does not necessarily amount to an Eighth Amendment violation. *Austin v. Terhune*, 367 F.3d 1167, 1171-72 (9th Cir. 2004) (upholding summary judgment dismissal of Eighth Amendment claim where prison guard exposed himself to prisoner in elevated, glass-enclosed control booth for no more than 30-40 seconds). Lastly, courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Here, the record shows that the ISU received information that Plaintiff and his cellmate were in possession of cellphones, which was confirmed by the cell search and subsequent confiscation because they are considered to be contraband. Brown Decl. ¶¶ 4, 12, Ex. A. Moreover, according to prison regulations, such searches, including "[r]andom or spot-check inspections of inmates," are permitted in prison especially where a reasonable suspicion exists that an inmate may have unauthorized or dangerous items concealed on his person. *See* Cal. Code Regs. tit. 15, § 3287(b). Overall, the goal of such searches is "to prevent possession and movement of unauthorized or dangerous items and substances into, out of, or within the institution." *Id.* Moreover, the record shows that the searches of Plaintiff's cell and his person were one of several searches conducted in Plaintiff's housing unit that morning, including a similar search of his cellmate, as mentioned above. Brown Decl. ¶ 13. While Plaintiff seems to

"contest[] the possession of the cellphone [D]efendants allege was inside the cell where Plaintiff was assigned," *see* Pl. Decl. ¶ 14, Plaintiff has not submitted evidence contradicting that the ISU received the aforementioned tip that led to the search.  Meanwhile, Defendants have offered evidence that such a search is permitted when correctional staff are searching for illegal contraband.  On these facts, Plaintiff has not shown that the unclothed body search was done for the purpose of harassment.  Instead, the Court notes that prison regulations allow for such searches in order to further institutional order and security, and as stated above, this Courts must accord prison administrators wide-ranging deference in the adoption and execution of such policies.  *See Bell*, 441 U.S. at 547; *Jeffers*, 267 F.3d at 917.

Nor do Plaintiff's allegations rise to the level of the egregious, pervasive, and/or widespread conduct necessary to establish an Eighth Amendment violation.  Defendants have presented undisputed evidence shows that no Defendant physically touched Plaintiff during the unclothed body search or while Defendant Patterson took photographs of Plaintiff.  Defendants' alleged conduct—laughing at Plaintiff during the search—does not rise to the level of pain sufficient to violate the objective component of the Eighth Amendment.  *See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112-13 (9th Cir. 2012) (affirming dismissal of Eighth Amendment claim alleging that guard humiliated inmate when the guard approached the inmate while the inmate was on the toilet, rubbed the inmate's thigh, "began smiling in a sexual [way], and left the cell laughing"); *Austin*, 367 F.3d at 1171-72 (concluding that claim that a guard exposed himself to inmate while making crude comments was not sufficiently serious to satisfy an Eighth Amendment violation because it was an isolated incident that was short in duration and there was no allegation of physical contact between the guard and the inmate); *Somers v. Thurman*, 109 F.3d 614, 622-23 (9th Cir. 1997) (holding that female officials' observation of unclothed male inmate, accompanied by "gawking, pointing, and joking" but without physical contact, was not sufficient to meet "objectively harmful" prong of Eighth Amendment test stating, "[t]o hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd").

As explained above, Defendants have provided the Court with copies of the photographs

taken by Defendant Patterson, which the Court has ordered to be filed under seal. *See* Galvan

Decl. ¶ 8, Ex. A. Specifically, the exhibit includes the photographs Defendant Patterson took of

Plaintiff on June 29, 2016, following the unclothed body search. *Id.* ¶¶ 3-4. Upon conducting a

review of the photographs, the Court finds that in all of the photographs except for the ones

depicting only the upper portions of Plaintiff's body, it is clear that Plaintiff is wearing boxer

shorts. *Id.*, Ex. A. None of the pictures show any part of Plaintiff's genitalia. To the extent

Plaintiff argues that the taking of photographs of Plaintiff in his boxer shorts violated the Eighth

Amendment, the Court finds that there is an absence of evidence that the taking of photographs

was sufficiently harmful such that it violated contemporary standards of decency. *See, e.g.*,

*Goodrick v. Sandy*, No. 1:10-cv-00603-EJL, 2013 WL 5409653, * 10 (D. Idaho Sept. 25, 2013)

(granting defendants' motion for summary judgment on prisoner's claim that he was subjected to

strip search and photographing of his naked body because claim did not satisfy objective or

subjective components of Eighth Amendment), *aff'd by Goodrick v. Carlin*, No. 13-35923, 616

Fed. Appx. 222 (9th Cir. Sept. 4, 2015) (unpublished memorandum disposition)

Finally, it seems that Plaintiff takes issue with the fact that a female correctional officer

(Defendant Patterson) participated in the search and argues that the prison violates the male

inmates' constitutional rights by "continuing to use female staff to conduct unsecure, non-

emergency strip searches of male inmates (cross-gender)." Dkt. 1 at 5. However, by itself,

"[c]ross-gender searches cannot be called inhumane and therefore do[] not fall below the floor set

by the objective component of the [E]ighth [A]mendment." *Somers v. Thurman*, 109 F.3d 614,

623 (9th Cir. 1997) (quoting *Johnson v. Phelan*, 69 F.3d 144, 150-51 (7th Cir. 1995)). In contrast,

the Ninth Circuit has upheld a district court's finding that there was sufficient "infliction of pain"

to trigger the Eighth Amendment in a cross-gender search case with exacerbating circumstances.

*See Jordan*, 986 F.2d at 1525-27. In *Jordan*, the Ninth Circuit relied upon several facts that,

combined with the policy of a clothed pat down search, was sufficient to support a finding of

"infliction of pain" capable of satisfying the objective component of the Eighth Amendment.

Specifically, the evidence in *Jordan* showed that female inmates were forced to undergo clothed,

intrusive, pat down searches conducted by male prison officials; there were physical, emotional,

23

and psychological differences between men and women; and some of the women subject to search were women who had been physically and sexually abused in the past. In sum, the Ninth Circuit recognized that the evidence in *Jordan* showed that the female inmates had certain vulnerabilities that would cause a cross-gender pat down search to exacerbate pre-existing mental conditions which could cause severe psychological trauma. *Id.*

The unclothed body search at issue in instant matter is distinguishable from the pat down searches in *Jordan*. Viewing the facts in the light most favorable to Plaintiff, the June 29, 2016 incident was the only time these specific Defendants ordered Plaintiff to submit to an unclothed body search. Defendants claim that the search took approximately one minute, while Plaintiff asserts it was longer than one minute. However, the record does not indicate that the search lasted for an inordinate amount of time. Furthermore, Plaintiff has not come forth with supporting evidence showing that he suffered from any pre-existing condition that would have been exacerbated by the unclothed body search.[12] And, lastly, no evidence exists showing that the unclothed body search involved any physical contact. For these reasons, no evidence exists to show that Plaintiff suffered an objectively, sufficiently serious harm to violate the Eighth Amendment.

In sum, the Court finds Plaintiff has failed to create a genuine issue of material fact as to whether Defendants' actions during the June 29, 2016 unclothed body search violated Plaintiff's Eighth Amendment rights. Accordingly, the Court GRANTS Defendants' motion for summary judgment on the merits as to Plaintiff's Eighth Amendment claim against Defendants Brown and Patterson, who are the served Defendants.

### c. Qualified Immunity

Defendants claim, in the alternative, that qualified immunity would protect them from liability. Dkt. 14 at 29-31.

"Qualified immunity shields an officer from suit when she makes a decision that, even if

---

[12] Plaintiff claims that he "was diagnosed with External Hemorrhoids by Medical Personnel at CTF on April 14, 2016." Pl. Decl. ¶ 9. However, Plaintiff has not supported such a claim with any medical evidence. Furthermore, he does not allege that such a condition was exacerbated or affected in any way by the unclothed body search.

constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The issue of qualified immunity generally entails a two-step process, which requires the court to determine first whether the defendant violated a constitutional right, and then to determine whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court modified the *Saucier* test and "gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated." *James v. Rowlands,* 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing *Saucier* standard after *Pearson*). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202; *see, e.g.*, *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (court may grant qualified immunity by viewing all of the facts most favorably to plaintiff and then finding that under those facts the defendants could reasonably believe they were not violating the law). In the instant case, the Court has concluded that Plaintiff's constitutional rights were not violated. Thus, viewing the record in the light most favorable to Plaintiff, Defendants prevail as a matter of law on their qualified immunity defense because the record establishes no Eighth Amendment violation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

However, even if a constitutional violation occurred with respect to Plaintiff's June 29, 2016 unclothed body search, Defendants argue that they remain entitled to qualified immunity as to the Eighth Amendment claim. Dkt. 14 at 31. Defendants argue that "[a]t the time of the search on June 29, 2016, it was clearly established that cross-gender observation of a strip search by prison personnel, at least in cases where there were no allegations of physical contact or other harassing behavior, does not violate the Constitution." *Id.* (citing *Morris v. CDCR*, Case No. 16-cv-5547, 2017 WL 2494654 (C.D. Cal. Mar. 3, 2017); *Malo v. Hernandez*, Case No. 13-cv-01781-SJO, 2014 WL 7246730, (C.D. Cal. Dec. 18, 2014); *Carlin v. Manu*, 72 F. Supp. 2d 1177 (D. Oregon 1999); *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997) (holding that strip searches

conducted within view of female staff are generally permissible); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) (holding that visual body cavity searches "involving no touching" are reasonable); *Grummett v. Rushen*, 779 F.2d 491, 493 n.1 (9th Cir. 1985) (declining to reach Plaintiff's Eighth Amendment challenge to strip search observed by female prison guards because it did not involve "the type of shocking and barbarous treatment protected against by the [E]ighth [A]mendment.").

The Court agrees with Defendants. In light of clearly established principles at the time of the incident, Defendants could have reasonably believed that their conduct of subjecting Plaintiff to an unclothed body search was lawful, especially after they received a tip that Plaintiff may be in possession of contraband. *See Bell*, 441 U.S. at 561 (prisoners may be subjected to strip searches and body cavity searches); *Grummett v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985) (routine pat-down searches which include the groin area, even when performed by guards of the opposite sex, do not violate a prisoner's constitutional rights). In addition, district courts within the Ninth Circuit have generally found no Eighth Amendment violation from a prisoner's claim that officials conducted an unclothed body search without physical contact or took nude photographs. *See, e.g.*, *Dawson v. Beard*, No. Case No. 1:15-cv-01867 DLB, 2016 WL 1137029, *5 (E.D. Cal. March 23, 2016) (report and recommendation dismissing prisoner's Eighth Amendment claim that two unclothed body searches, one of which was in front of inmates and female officers, for failure to state a claim); *Wilson v. Soto*, Case No. CV 15-9546-PSG (JPR), 2016 WL 825194, *4-*5 (C.D. Cal. Jan. 21, 2016) (report and recommendation dismissing with leave to amend prisoner's claim that prison officials violated Eighth Amendment when prisoner was forced to strip naked and submit to a cavity search in the prison yard in front of inmates, female and male guards, and some guards pointed and laughed); *Goodrick*, 2013 WL 5409653, *10 (granting defendants' motion for summary judgment on prisoner's claim that he was subjected to strip search and photographing of his naked body because claim did not satisfy objective or subjective components of Eighth Amendment); *Carroll v. Read*, No. CV 10-6964-CJC (DTB), 2013 WL 1858866, * (C.D. Cal. Jan. 31, 2013) (report and recommendation dismissing for failure to state an Eighth Amendment claim

prisoner's allegation that prison official conducted an unclothed body search on plaintiff, and ordered plaintiff to expose his buttocks to them two separate times because prisoner's claim showed nothing more than a minimal or momentary discomfort); *Blacher v. Johnson*, No. 1:12-cv-01159 GSA PC, 2012 WL 12906134, *2 (E.D. Cal. Sept. 7, 2012) (report and recommendation dismissing prisoner's Eighth Amendment claim that female correctional officers smirked or were condescending when prisoner was subjected to unclothed body search).

Accordingly, Defendants are entitled to qualified immunity, and their motion for summary judgment will be GRANTED on this ground as well.

### d. Unserved Defendants

Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) Plaintiff has been provided an opportunity to address the controlling issues. *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir.) (citing, *inter alia*, *Silverton v. Dep't of the Treasury*, 644 F.2d 1341, 1345 (9th Cir 1981)), *cert. denied*, 516 U.S. 864 (1995).

As mentioned above, two recently-named Doe Defendants have not been served and have not joined the other Defendants in their motion for summary judgment. The unserved Defendants in this case are Defendants Rodriguez and Salas. It is apparent, however, that the claims against the unserved Defendants are without merit and subject to summary adjudication. The allegations against the unserved Defendants in Plaintiff's original complaint are the same as those against the served Defendants. Specifically, Plaintiff's allegations relating to his Eighth Amendment claim against Defendants Rodriguez and Salas are the same claim as against the served Defendants. There is no suggestion in the complaint, the exhibits attached thereto, or in the briefs and exhibits filed in connection with the present dispositive motion, that the analysis differs with respect to the unserved Defendants as opposed to the served Defendants. Accordingly, Defendants Rodriguez and Salas are entitled to summary judgment as a matter of law as to the Eighth Amendment claim against them.

## C. Plaintiff's Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. Dkt. 21. Plaintiff requests the Court appoint counsel based upon the following: the complexity of the case; his imprisonment greatly limits his ability to litigate; he is unable to afford counsel; he has no legal education; and the appointment of counsel would "better enable Plaintiff to present evidence and cross-examine witnesses." *Id.* at 2. However, there is no constitutional right to counsel in a civil case. *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). 28 U.S.C. § 1915 confers on a district court only the power to "request" that counsel represent a litigant who is proceeding *in forma pauperis*. 28 U.S.C. § 1915(e)(1). This does not give the courts the power to make "coercive appointments of counsel." *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 310 (1989).

The Court may ask counsel to represent an indigent litigant under Section 1915 only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) *withdrawn in part on other grounds on reh'g en banc*, 154 F.3d 952 (9th Cir. 1998) (en banc); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Both of these factors must be viewed together before reaching a decision on a request for counsel under section 1915. *Id.* Neither the need for discovery, nor the fact that the *pro se* litigant would be better served with the assistance of counsel, necessarily qualify the issues involved as complex. *Rand*, 113 F.3d at 1525 (where plaintiff's pursuit of discovery was comprehensive and focused and his papers were generally articulate and organized, district court did not abuse discretion in denying request for counsel).

Because Plaintiff has adequately presented his claims and the Court has granted Defendants' dispositive motion as to Plaintiff's Eighth Amendment claim as well as allowed the parties to file briefs addressing Plaintiff's Fourth and Fourteenth Amendment claims, there are no exceptional circumstances presented requiring appointment of counsel. Accordingly, Plaintiff's motion for appointment of counsel is DENIED. Dkt. 21.

For the reasons outlined above, the Court orders as follows:

1.      Plaintiff's motion to amend the complaint and motion for service of process are GRANTED.  Dkts. 16, 17.  ISU Correctional Sergeant S. Rodriguez and ISU Correctional Officer R. Salas are added as Defendants. The Court orders service of process on these newly-added Defendants, and the Clerk shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint (dkt. 1) and all attachments thereto, a copy of the Court's January 5, 2018 Order of Service (dkt. 7), Plaintiff's motion to amend the complaint (dkt. 16), and copies of this Order as well as the concurrently-filed "Order Directing Defendants to File Dispositive Motion or Notice Regarding Such Motion" on:

**ISU Correctional Sergeant S. Rodriguez and ISU Correctional Officer R. Salas at CTF.**

2.      The Court GRANTS Defendants' motion for administrative relief to file certain documents under seal.  Dkt. 15.  With respect to Defendants' dispositive motion, the Clerk is instructed to maintain under seal the following: Confidential Exhibit A, which is attached to the declaration of Litigation Coordinator Galvan in support of Defendants' Administrative Motion for an Order to File Confidential Documents Under Seal.  The foregoing material shall be maintained under seal and *not* entered individually on the docket until the conclusion of this case and any appellate proceedings, after which time they should be returned to defense counsel upon timely request.

3.      Defendants' motion to dismiss is GRANTED.  Dkt. 14.  The claims against Defendants in their official capacities and the claim for punitive damages are DISMISSED with prejudice.

The Eighth Amendment claim against Defendants Khan, Kelley and Truett is DISMISSED without leave to amend and with prejudice.

The Eighth Amendment claim against Defendants Kernan and Hatton is DISMISSED with leave to amend.  If Plaintiff believes he can provide sufficient facts from which it can be inferred that Defendants Kernan and Hatton are liable under Section 1983, Plaintiff must file an amendment to the complaint no later than **twenty-eight (28) days** from the filing date of this

Order. If Plaintiff fails to do so, Defendants Kernan and Hatton will remain dismissed and the dismissal will be without leave to amend and without further order from the Court. The Court further notes that it is providing Plaintiff an opportunity to file an *amendment to the complaint* rather than an *amended complaint*, and thus Plaintiff will only need to allege a claim against Defendants Kernan and Hatton, and will not need to repeat the claim against the other Defendants. An amendment is read together with the complaint, whereas an amended complaint would supersede the complaint.

4.     Defendants' motion for summary judgment relating to the Eighth Amendment claim is GRANTED on the merits and based on qualified immunity as to served Defendants Brown and Patterson and as to unserved Defendants Rodriguez and Salas. Judgment will not be entered at this time, however, because there remain other claims that must be litigated. A single judgment will be entered after that is done.

5.     By separate and concurrently-filed Order, the Court has reviewed the complaint and determined that it previously overlooked Plaintiff's Fourth and Fourteenth Amendment claims. *See* Order Directing Defendants to File Dispositive Motion or Notice Regarding Such Motion. Thus, the portion of this Order granting Defendants' motion for summary judgment is limited to Plaintiff's Eighth Amendment claim.

6.     Plaintiff's motion for appointment of counsel is DENIED. Dkt. 21.

7.     This Order terminates Docket Nos. 14, 15, 16, 17, and 21.

IT IS SO ORDERED.

Dated: March 14, 2019

YVONNE GONZALEZ ROGERS
United States District Judge