UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DAVID WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>    Defendants. | Case No. 17-cv-03538-YGR (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff James David Williams, a state prisoner currently incarcerated at the Correctional Training Facility ("CTF"), filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging his rights were violated by CTF prison officials based on their involvement in Plaintiff's unclothed body search on June 29, 2016. Plaintiff seeks injunctive relief and monetary damages.

Upon conducting an initial review of the complaint, the Court determined that, liberally construed, Plaintiff's allegations were sufficient to state cognizable claims for the violation of his rights under the Eighth Amendment and issued service on the following named Defendants: California Department of Corrections and Rehabilitation ("CDCR") Secretary Scott Kernan; CTF Warden S. Hatton; Investigative Services Unit ("ISU") Lieutenant V. Khan; ISU Sergeant S. Kelley; ISU Correctional Officers Z. Brown and Officer S. Patterson; and CTF Appeals Coordinator J. Truett. Dkt. 7 at 2 (citing *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc); *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922-25 (9th Cir. 2017) ("*Byrd II*")). The Court dismissed his claims against the Doe Defendants without prejudice to move to file an amended complaint to add them as named defendants. *Id.* at 3 (citing *Brass v. County of Los Angeles*, 328 F.3d 1192, 1195-98 (9th Cir. 2003)). Thereafter, Plaintiff requested to do so by adding two named Defendants to this action: ISU Correctional Sergeant S.

United States District Court
Northern District of California

Rodriguez and ISU Correctional Officer R. Salas, who were also employed by CTF during the time frame at issue. *See* Dkts. 16, 17.

The served Defendants—Defendants Kernan, Hatton, Khan, Kelley, Brown, and Patterson—previously filed a motion to dismiss and motion for summary judgment as to the Eighth Amendment claim. *See* Dkt. 14. In an Order dated March 14, 2019, the Court granted Defendants' motions as to served Defendants Khan, Kelley, Truett, Brown, and Patterson and as to unserved Defendants Rodriguez and Salas. *See* Dkt. 29. In the same Order, the Court granted Plaintiff leave to amend an Eighth Amendment claim against Defendant Kernan and Hatton no later than twenty-eight days from the filing date of the March 14, 2019 Order "if Plaintiff believes he can provide sufficient facts from which it can be inferred that Defendants Kernan and Hatton are liable under Section 1983." *Id.* at 29-30. The Court further noted as follows: "If Plaintiff fails to do so, Defendants Kernan and Hatton will remain dismissed and the dismissal will be without leave to amend and without further order from the Court." *Id.* at 30. The Court notes that Plaintiff failed to amend his claims as to Defendants Kernan and Hatton in the time provided, and thus, the claims against Defendants Kernan and Hatton will remain DISMISSED without leave to amend and without further order from the Court.

Concurrently and in a separately-filed Order, the Court found the complaint stated cognizable claims under the Fourth and Fourteenth Amendments, and ordered Defendants Brown, Patterson, Rodriguez, and Salas (hereinafter "Defendants") to file a dispositive motion thereon. Dkt. 30. Defendants have since filed a motion for partial dismissal and motion for summary judgment. Dkt. 37. Plaintiff filed an opposition (dkt. 38), along with a declaration, exhibits and separate statement of facts (dkts. 38-1, 38-2, 39), and Defendants filed a reply[1] (dkt. 40). Having read and considered the papers submitted and being fully informed, the Court hereby GRANTS Defendants' motion for partial dismissal and motion for summary judgment as to the remaining claims under the Fourth and Fourteenth Amendments.

---

[1] In their reply, Defendants raise numerous evidentiary objections to several of Plaintiff's assertions and documents submitted in opposition. Dkt. 40 at 13-17. Where relevant, some of these objections are discussed in the instant Order.

2

## II. FACTUAL BACKGROUND[2]

### A. The Parties

At the time of the events set forth in his complaint, Plaintiff was a state prisoner who was incarcerated at CTF, which is where he is still currently incarcerated. *See* Dkt. 1 at 1. Also during the time frame at issue, the following remaining Defendants were employed by the CDCR and CTF, including remaining Defendants Brown (a male officer) and Patterson (a female officer) as well as two other male officers, Defendants Rodriguez and Salas, who have since been served.

### B. Plaintiff's Version

The following background relating to Plaintiff's Eighth Amendment claim is taken from the Court's March 14, 2019 and January 5, 2018 Orders:

> Plaintiff claims that on June 29, 2016, Defendants Brown and Patterson, along with [Defendants Rodriguez and Salas] subjected him to "cruel and unusual sexual invasion of privacy [and] sexual misconduct" when they forced him to do an "open-public full body strip search . . . [t]hen a rectum/cavity search.[FN 4]" Dkt. 1 at 3. Furthermore, Defendant Patterson, who is a female officer, was present during the search and took "sexually suggestive photographs" of Plaintiff while he was partially nude. *Id.* Plaintiff also claims that Defendant Brown laughed at him during the cavity search. *Id.* at 5. Plaintiff adds that Defendants did not explain "the purpose of the photos . . . nor what authorize[d] them" to take such photos. *Id.*
>
> [FN 4:] Plaintiff had initially alleged that Defendants ordered him to submit to a "rectum/cavity search." Dkt. 1 at 3. However, Defendants clarify that Plaintiff was not subject to a cavity search, which would have been conducted in a medical setting under the supervision of a doctor. *See* Brown. Decl. ¶ 9; *see also* Cal. Code Regs. tit. 15, § 3287(b)(5). In his declaration, Plaintiff again alleges that he was subjected to a "Cavity Search." *See* Pl. Decl. ¶ 6. In their reply, Defendants argue that Plaintiff's aforementioned allegation is "misleading" because the "unclothed body search was strictly a visual inspection of [Plaintiff's] body." Dkt. 27 at 5. Defendants again clarify that no "cavity search" was performed because such a search "may only be performed by medical professionals when there is a need to extricate items concealed in the inmates' body cavities." *Id.* at 6. Nothing in the record indicates that there was any need to

---

[2] This Order contains a few acronyms. Here, in one place, they are:

| | |
|---|---|
| CDCR | California Department of Corrections and Rehabilitation |
| CTF | California Training Facility |
| ISU | Investigative Services Unit |
| PREA | Prison Rape Elimination Act |
| STG | Security Threat Group |

> extricate such items from Plaintiff's body cavity. Plaintiff does not dispute Defendants' clarification. Therefore, the Court need not address Plaintiff's allegations relating to any "rectum/cavity search."

Dkt. 29 at 1-3 (citing Dkt. 7 at 2) (brackets and footnotes added). Plaintiff claims that such treatment of inmates has violated his constitutional rights and that female correctional officers are still being allowed to take partially nude photographs of male inmates. Dkt. 1 at 6.

### C. Defendants' Version

In the instant pending dispositive motion, the remaining Defendants have elaborated more on the factual background of Plaintiff's claim, and the Court includes it as Defendants' version below.

#### I. BROWN AND SALAS'S CONDUCT.

> Around June 29, 2016, the Investigative Services Unit (ISU) at [CTF] received a tip that Williams and his cellmate [inmate Jason Smith][3] might be in possession of cellular phones, which prisoners are not allowed to have. (Brown Decl., ECF No. 14-3, at ¶ 4; Rodriguez Decl. at ¶ 5.) On June 29, 2016, Defendant Brown—who is an ISU officer—arrived at Williams's housing unit shortly after 6:00 a.m. (Brown Decl., ECF No. 14-3, at ¶ 4.) Williams and his cellmate were asked to exit the cell. (*Id.* at ¶ 5.) Brown's colleague, Defendant Salas, performed a clothed body search of Williams and his cellmate, which consisted of a pat-down and the use of a handheld metal detector. (*Id.*; Salas Decl. at ¶ 4.)
>
> Although the clothed body search with a handheld metal detector had negative results for contraband, Brown was not convinced that Williams was not concealing contraband on his person. (Brown Decl., ECF No. 14-3, at ¶ 6.) Brown and Salas escorted Williams to the housing unit's shower area for the purpose of performing an unclothed body search. (*Id.*) Such searches are routinely performed in shower areas because the showers are private, more spacious than cells, and because no other inmates have a direct view inside the

---

[3] Inmate Smith, the other inmate housed in Plaintiff's cell (F Wing cell number 331), *see* Brown Decl., Ex. A, filed a civil rights action in this Court, in which he also alleges that his Eighth Amendment rights were violated by the same prison officials based on their involvement in a similar unclothed body search on June 29, 2016. *See Smith v. Hatton*, Case No. C 17-04030 BLF (PR). On November 15, 2018, the Honorable Beth Labson Freeman granted Defendants' motion to dismiss the Eighth Amendment claim against Defendants Khan and Kelley, and she also granted their motion for summary judgment on the Eighth Amendment claim against Defendants Brown, Patterson, Rodriguez, and Salas on the merits and based on qualified immunity. *See* Dkt. 67 of Case No. C 17-04030 BLF (PR). Judge Freeman has also dismissed the Eighth Amendment claim against Defendant Hatton. *See* Dkt. 70 of Case No. C 17-04030 BLF (PR). On August 14, 2019, Judge Freeman granted the remaining dispositive motion as to inmate Smith's Fourth and Fourteenth Amendment claims against Defendants Brown, Patterson, Rodriguez, and Salas. *See* Dkt. 80 of Case No. C 17-04030 BLF (PR). On the same date, Judge Freeman issued judgment and closed the case. *See* Dkt. 81 of Case No. C 17-04030 BLF (PR).

shower area, as they would of a cell. (*Id.* at ¶ 7.) And unclothed body searches are generally conducted early in the morning to limit the amount of disturbance on the housing unit's programming and operations. (*Id.* at ¶ 4.)

Also, early-morning times are favored because most inmates, except for a few who have work assignments, are inside their cells until shortly after 7:00 a.m., when the morning release for breakfast occurs. (*Id.*)

The unclothed body search that Brown and Salas performed was strictly visual and lasted approximately one minute. (Brown Decl., ECF No. 14-3, at ¶ 8; Salas Decl. at ¶ 5.) The search did not include any physical touching. (Brown Decl., ECF No. 14-3, at ¶ 9.) The body search consisted only of a visual inspection of Williams's hair, mouth, armpits, arms, palms, and feet. (*Id.* at ¶ 8.) Williams was also required to bend forward at the waist, spread his buttocks, and cough several times. (*Id.*) This was necessary to ensure that he did not conceal contraband in his anal cavity, which is how inmates often conceal drugs and other forbidden items. (*Id.*) Overall, such unclothed body searches are routinely done as part of inspections of inmates, and they may be conducted often times on an unannounced and random basis. (*Id.* at ¶ 10; Rodriguez Decl. at ¶¶ 7, 10, & 12.) On June 29, 2016, several other cell and body searches were performed, including a body search of Williams's cellmate. (Brown Decl., ECF No. 14-3, at ¶ 13; Rodriguez Decl. at ¶ 12.)

Thereafter, Brown and Salas proceeded to search Williams's cell. (Brown Decl., ECF No. 14-3, at ¶ 12.) The cell search confirmed the information that ISU had received, as two cellphones and two chargers were found hidden behind and inside a mattress. (*Id.*) The cellphones had Internet, camera, and GPS capabilities. (*Id.*) Brown and Salas confiscated the items as contraband. (*Id.*)

## II. PATTERSON'S PHOTOGRAPHS OF PLAINTIFF.

Like Brown and Salas, Patterson is an ISU officer at CTF. (Patterson Decl., ECF No. 14-2, at ¶ 4.) Patterson is assigned to Investigations and she investigates inmates for possession and introduction of contraband into the prison, and any criminal activity within the institution. (*Id.*) She is also tasked with investigating and documenting inmates' Security Threat Group (STG) status. (*Id.*)

STG refers to any group of offenders that prison officials reasonably believe poses a threat to the physical safety of other inmates and staff due to the very nature of the groups. (*Id.* at ¶ 5.) Some of these groups at CTF include the Bloods, Crips, Mexican Mafia, Aryan Brotherhood, and Black Guerilla Family. (*Id.*) One of the indicia of STG membership is the use of gang tattoos. (*Id.* at ¶ 6.) Photographing inmates and their tattoos to document their STG status is an essential part of Patterson's job responsibilities as an investigator. (*Id.* at ¶ 10.) These photographs are for the sole internal use of ISU. (*Id.* at ¶ 11.)

Although Patterson was not the only ISU officer able to photograph inmates, she was assigned to take photographs on June 29, 2016.

5

> (Patterson Decl., ECF No. 14-2, at ¶ 10.) Patterson took several photographs of Williams, including four default shots of his front, back, left side, and right side. (*Id*. at ¶ 12.) Some of the photographs also include close-up shots of Williams's tattoo on his back. (*Id*.) Williams wore white underwear briefs in all the photographs, and the only exposed areas of his body were his arms, legs, and torso. (*Id*.) Williams was not nude. (*Id*.) Patterson likely gave Williams verbal commands, but in keeping with the ethical code of the job, she did not touch him or make any sexual, derogatory, or humiliating remarks. (*Id*. at ¶ 13.)
>
> Williams complained that copies of the photographs were never provided to him. (*See* Compl., ECF No. 1, at 11 (requesting "[t]o receive the Photos that were taken of me partially nude").) At the request of the Attorney General's Office, arrangements were made at the prison for Williams to view copies of all the photographs that were taken of him on June 29, 2016, so that he might satisfy himself that the photographs are not sexually suggestive. (*See* Declaration of E. Galvan, ECF No. 15-1, at ¶ 5.) Williams was issued a pass to meet the Litigation Coordinator of the Correctional Training Facility on April 11, 2018. (*Id*.) Williams viewed the photographs without any incident. (*Id*. at ¶ 6.)
>
> **III. RODRIGUEZ'S CONDUCT.**
>
> On June 29, 2016, Rodriguez was an ISU sergeant at Correctional Training Facility State Prison. (Rodriguez Decl., at ¶ 1.) Rodriguez was present when Brown and Salas performed the clothed body search on Plaintiff outside of his cell. (*Id.* at ¶ 11.) But he was not present during the search of Williams at the communal shower area. (*See id.* at ¶ 6.)

Dkt. 37 at 10-13 (brackets and footnote added).

## III. DISCUSSION

Defendants have filed a motion for partial dismissal and motion for summary judgment. Dkt. 37. In the partial motion to dismiss, Defendants argue, inter alia, that Plaintiff's claims against Defendants in their official capacities are barred, and that Plaintiff's claim for damages from emotional distress should be dismissed. *See id.* at 13-15. Defendants also move for summary judgment on the merits and based on qualified immunity. *See id.* at 15-28.

For the reasons stated below, the Court GRANTS Defendants' motion for partial dismissal of the claims against all remaining Defendants in their official capacities. The Court also GRANTS Defendants' motion for summary judgment. First, the Court agrees with Defendants that to the extent Plaintiff's Fourteenth Amendment claim flows from a search of his body, then the Fourteenth Amendment substantive due process analysis collapses into a Fourth Amendment

6

analysis. Second, the Court grants summary judgment as to Plaintiff's Fourth Amendment claim against Defendants Brown, Salas, and Patterson on the merits and as to claims against Defendant Rodriguez in his supervisory capacity.

### A. MOTION FOR PARTIAL DISMISSAL

#### 1. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Failure to state a claim is grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal for failure to state a claim is a ruling on a question of law. *Parks Sch. of Bus., Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Symington*, 51 F.3d at 1484. However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). But a *pro se* pleading must be liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Twombly*, 550 U.S. at 570 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2. Analysis - Official Capacity Claims

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. Dkt. 1 at 3. However, Defendants argue that Plaintiff's claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. Dkt. 37 at 13-14.

The Eleventh Amendment to the United States Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985) *abrogated on other grounds as noted in Lane v. Pena*, 518 U.S. 187, 198 (1996). Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Eleventh Amendment immunity extends to suits against a state agency, *Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR and California Board of Prison Terms entitled to Eleventh Amendment immunity), and to suits for damages against state officials sued in their official capacities, *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). California has not waived its Eleventh Amendment immunity with respect to claims brought under Section 1983 in federal court. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Therefore, because the CDCR is a state agency, its employees, including the aforementioned Defendants, sued in their official capacities are immune from suit for monetary damages.

Accordingly, the Court GRANTS the motion to dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities, and such claims are DISMISSED as barred by the Eleventh Amendment.[4] Dkt. 37. Because it is clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities is without leave to amend.

### B. MOTION FOR SUMMARY JUDGMENT

#### 1. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment

---

[4] Eleventh Amendment immunity does not bar Plaintiff's claims against Defendants sued in their individual capacities. *See Graham*, 473 U.S. at 165-66.

8

on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of their motion for summary judgment, Defendants Brown and Patterson rely on their declarations and exhibits in support of the previously-filed motion for summary judgment, including copies of the grievance responses and the Rules Violation Report related to the June 29, 2016 incident at issue. Dkts. 14-2, 14-3, 14-4, 14-5, 14-6; Dkt. 14-3 at 6; Dkt. 14-5 at 6-9; Dkt. 14-6 at 6-16. Attached to ISU Sergeant S. Kelley's Declaration is a copy of the "general chrono regarding the staff sexual misconduct allegation log number CTF-PREA-16-07-019." Dkt. 14-4 at 6. Because the aforementioned documents have been properly authenticated pursuant to Federal Rule of Evidence 803(6), the Court will consider them in connection with the instant motion for summary judgment. In addition, Defendants have submitted Litigation Coordinator Galvan's declaration and copies of the photographs taken of Plaintiff, which the Court has reviewed and ordered to be filed under seal. Furthermore, in support of their motion for summary judgment, Defendants Salas and Rodriguez have submitted their own declarations. Dkts. 37-1, 37-2.

9

Plaintiff has verified his complaint, opposition, declarations, and response (to Defendants' separate statement)[5] in support of his opposition by signing them under penalty of perjury.[6] Dkt. 1 at 3; Dkt. 38 at 19; Dkt. 38-1 at 4; Dkt. 39 at 5.[7] The Court may treat the allegations in the verified complaint and declaration as opposing affidavits to the extent such allegations are based on Plaintiff's personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating a plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, he stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

### 2. Analysis of Merits

As mentioned above, Plaintiff claims that on June 29, 2016, Defendants Brown, Patterson,

---

[5] Defendants have filed an objection to Plaintiff's evidence supporting his opposition based on several grounds, including that certain paragraphs in his opposition/declaration and certain exhibits "make speculative and conclusory allegations that lack any foundational and evidentiary support, and are irrelevant, in violation of Civil Local Rule 7-5 and Federal Rules of Evidence 402, 602, and 701." Dkt. 40 at 13-17. The Court notes Defendants' objection and stresses that it only considers Plaintiff's allegations in his declaration to the extent such allegations are based on his personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). Further, the Court may, in this Order, refer to Plaintiff's verified declarations in support of his opposition as his "declaration/opposition" or cite to it as "Dkt. 38-1" or "Dkt. 38-2."

[6] Also attached in support of Plaintiff's complaint and opposition (to the previous motion for summary judgment) are the grievance responses that are mostly similar to those attached to Defendants Khan's and Truett's declarations. *See* Dkt. 1, Ex. A; Dkt. 14-5 at 6-9; Dkt. 14-6 at 6-16. As these documents are evidence already considered in connection with the summary judgment motion, the Court will also consider the same documents submitted by Plaintiff. Plaintiff has also submitted various CDCR Operation Manual procedures relating to searches as well as Defendants' declarations and responses to interrogatories, to which Defendants do not object. Pl. Decl., Exs. C1-C2, D1, E1-E2, F1-F3. Also submitted by Plaintiff are various exhibits to which Defendants have objected to as "irrelevant and confusing or misleading," including: a grievance relating to a disciplinary action stemming from Plaintiff being found guilty in possession of a cellphone (Pl. Decl., Ex. A2); documents relating to the communal shower, Plaintiff's tattoos, Defendant Kahn's confirmation as an Institution Gang Investigator, Inmate M. Barss's grievance relating to June 5, 2018 "Litigation Clarification," and a CDCR Form 22 filed by Plaintiff relating to whether there was a 128-B Chrono filed on June 29, 2016 (Pl. Decl., Ex. B1-B5); and Operations Procedures relating to "Temporary Holding Cells" (Pl. Decl., Ex. D2). The Court notes Defendants' objections and stresses that it only considers *relevant* evidence that has been properly authenticated pursuant to Federal Rule of Evidence 803(6).

[7] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

Rodriguez, and Salas forced him to undergo an unclothed body search. Dkt. 1 at 3. Furthermore, Defendant Patterson was the female officer present during the search who allegedly took "sexually suggestive photographs" of Plaintiff while he was partially nude. *Id.* Plaintiff also claims that Defendant Brown laughed at him during the search. *Id.* at 5. Plaintiff claims that such treatment of inmates has violated his constitutional rights and that female correctional officers are still being allowed to take partially nude photographs of male inmates. *Id.* at 6. In essence, Plaintiff claims that Defendants sexually harassed him by subjecting him to an unclothed body search, as well as by allowing a female correctional officer to take partially nude photographs of him, and that they did so deliberately to embarrass and humiliate him. Based on these allegations, the Court found that Plaintiff not only stated a cognizable claim that the aforementioned Defendants violated Plaintiff's Eighth Amendment rights, which has since been resolved, but also his Fourth and Fourteenth Amendment rights.

### a. Fourteenth Amendment Claim

Defendants assert that Plaintiff's Fourteenth Amendment claim should be dismissed as duplicative of his Fourth Amendment claim. Dkt. 37 at 17-19. In the alternative, Defendants also argue that even if Plaintiff were able to articulate a claim based on the Fourteenth Amendment, that claim would fail. *Id.* at 19. Defendants add that the Ninth Circuit has "repeatedly held that there is no constitutional violation when female guards occasionally see male prisoners in the nude." *Id.* (citing *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985) (Fourteenth Amendment rights not violated by "infrequent and casual observation, or observation at a distance" of nude inmates by female prison guards).

The Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights. *See Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996) ("*Armendariz II*") (en banc), *overruled in part on other grounds by Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007). Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). Substantive due process must be expanded only with the greatest care and

11

its protection is primarily reserved for liberties deeply rooted in the nation's history and tradition. *See Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) (persons who have been convicted of serious sex offenses do not have a fundamental right to be free from the registration and notice requirements set forth in Alaska statute).

Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior—e.g., the Takings Clause of the Fifth Amendment—that Amendment, not the more generalized notion of "substantive due process," must be used to analyze such claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Substantive due process does not extend to circumstances already addressed by other constitutional provisions. *See Albright*, 510 U.S. at 273 (constitutionality of arrest may only be challenged under Fourth Amendment); *Fontana v. Haskin*, 262 F.3d 871, 882 & n.6 (9th Cir. 2001) (sexual harassment by a police officer of criminal suspect during seizure is analyzed under Fourth Amendment, whereas sexual misconduct by officer toward another generally is analyzed under substantive due process); *Armendariz II*, 75 F.3d at 1325-26 (dismissing substantive due process claim where conduct alleged is type of action regulated by Fourth and Fifth Amendments).

Here, Plaintiff's claims arise from an allegedly unlawful strip-search. The Ninth Circuit has made a distinction that the Fourth Amendment applies to the invasion of bodily privacy in prisons, *Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988), and the Fourteenth Amendment applies to a pretrial detainee's right to bodily privacy. *Byrd II*, 845 F.3d at 923. At the time of the search in the instant matter, Plaintiff was an incarcerated prisoner. As such, his challenge to Defendants' alleged conduct during the strip-search is the type of action that is regulated by the ***Fourth*** Amendment. *See Armendariz II*, 75 F.3d at 1325-26; *Bull*, 595 F.3d at 974-75. Moreover, Plaintiff relies solely on the ***Fourth*** Amendment to assert his claim that he was subjected to an unreasonable strip-search. *See* Dkt. 38 at 9. Accordingly, Defendants' motion to dismiss the Fourteenth Amendment claim is GRANTED. Because the claim is proceeding under the Fourth Amendment, leave to amend is unnecessary.

### b. Fourth Amendment Claim

The Fourth Amendment applies to the invasion of bodily privacy in prisons. *Bull*, 595 F.3d at 974-75; *Michenfelder*, 860 F.2d at 333. To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests. *See Bull*, 595 F.3d at 973; *Michenfelder*, 860 F.2d at 333-34. The court also should apply the balancing test set forth in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), and consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. *See Bull*, 595 F.3d at 974-75 (applying *Turner* and *Bell*); *Thompson v. Souza*, 111 F.3d 694, 699-700 (9th Cir. 1997) (same); *Michenfelder*, 860 F.2d at 332-33 (same). Put simply, the court should "consider the reasonableness of [the intrusion under *Bell*] to help [it] determine if [the intrusion] was reasonably related to legitimate penological interests [under *Turner*]." *Thompson*, 111 F.3d at 700.

Prisoners and pretrial detainees in institutional settings may be subjected to strip-searches and body cavity searches if they are conducted in a reasonable manner. *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979). The Fourth Amendment right to be secure against unreasonable searches extends to incarcerated prisoners, but the reasonableness of a particular search must be determined by reference to the prison context. *See Michenfelder*, 860 F.2d at 332. As noted above, the court should consider the reasonableness of the search under *Bell* to help it determine if the search was reasonably related to legitimate penological interests under *Turner*. *See Thompson*, 111 F.3d at 700 (finding that visual strip-searches and urine tests of large group of prisoners to search for drugs were reasonably related to the prison officials' legitimate penological interest in keeping drugs out of prison). The prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce security in conducting a search. *See id.*

Defendants assert that after the balancing test set forth in *Bell*, 441 U.S. 520, the unclothed body search did not violate Plaintiff's Fourth Amendment rights. *See* Dkt. 37 at 19-25.

#### 1) Scope and Manner of the Search

Defendants first assert that the first two *Bell* factors, scope and the manner of the search,

13

were reasonable. Dkt. 37 at 20-22. Defendants point out that it is undisputed that: (1) the search was purely visual because Defendants Brown, Salas, and Patterson did not touch Plaintiff during the unclothed body search or while photographs were being taken; and (2) this type of strip-search is routinely conducted by prison officials "in order to find contraband." *Id.* at 20.

It is well-established that strip-searches are a legitimate and reasonable tool for maintaining security within a prison or jail. *See*, *e.g., Bell*, 441 U.S. at 560 (upholding policy of strip-searching inmates after every visit with a person from outside the institution); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012) (upholding policy of strip-searching every detainee at a jail, even those who have not been convicted of a crime); *Michenfelder*, 860 F.2d at 332-33 (approving policy of strip-searching an inmate every time he leaves or returns to the unit, as well as after movement under escort within the unit) ("[S]o long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip-search has a legitimate penological purpose."); *Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (upholding use of strip-searches as part of search for illicit drugs); *Rickman v. Avaniti*, 854 F.2d 327 (9th Cir. 1998) (upholding the use of visual, no-touching strip-searches on inmates confined to administrative segregation when they leave their cells). As such, Defendants have shown the absence of a genuine issue of material fact with respect to whether the scope and manner of the unclothed body search were reasonable.

In his opposition, Plaintiff asserts that the unclothed body search was unreasonable because it occurred in the "presence" of a "female staff-cross-gender (Defendant Patterson)." Dkt. 38 at 13. However, Plaintiff has made no allegation that Defendant Patterson had an unobstructed and prolonged view of Plaintiff during the unclothed body search. *See* Dkts. 1, 38. Meanwhile, Defendant Patterson alleges that she encountered Plaintiff only after the strip-search had been completed. Patterson Decl. ¶ 8. Defendant Patterson's allegation is corroborated by the declarations of Defendants Brown and Salas, who indicate that Defendant Patterson was present only to the degree that she waited outside the shower area until *after* the unclothed body search had been completed. Brown Decl. ¶ 11; Salas Decl. ¶¶ 6-7. Defendants Brown and Salas both claim that they were the only ones who could have observed the strip-search because they stood

14

around Plaintiff, acting like a wall and blocking the shower area opening. Brown Decl. ¶ 10; Salas Decl. ¶ 7. Thus, the evidence shows that Defendant Patterson did not have a direct line of sight or an opportunity to closely observe Plaintiff while he was nude. *See id.* Nevertheless, the Ninth Circuit has found that assigned positions of female guards that require only infrequent and casual observation, or observation at a distance, of unclothed male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference. *See Michenfelder*, 860 F.2d at 334; *see also Jordan v. Gardner*, 986 F.2d 1521, 1524-25 (9th Cir. 1993) (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized"); *see also Grummett*, 779 F.2d at 494 (upholding a system of assigning female officers within a correctional facility where they occasionally viewed male inmates in various states of undress and conducted routine pat-downs of fully clothed inmates). Here, there is no allegation that Defendant Patterson was able to make even a casual observation of Plaintiff while waiting outside the shower area. Furthermore, to the extent that Plaintiff alleges that the unclothed body search was conducted to demean and embarrass" him, such an allegation is merely conclusory and unsupported with facts that Defendant Patterson, while "present" during the strip-search, had a prolonged view of him in the nude such that the experience was degrading to Plaintiff. *See Michenfelder*, 860 F.2d at 334.

Also in his opposition, Plaintiff claims that his "genitals and pubic hairs w[ere] captured on one of the photo images" taken by Defendant Patterson. Dkt. 38 at 16. As explained above, Defendants have provided the Court with copies of the photographs taken by Defendant Patterson, which the Court has ordered to be filed under seal. *See* Galvan Decl. ¶ 8, Ex. A. Specifically, the exhibit includes the photographs Defendant Patterson took of Plaintiff on June 29, 2016, following the unclothed body search. *Id.* ¶¶ 3-4. Upon conducting a review of the photographs, the Court finds that in all of the photographs except for the ones depicting only the upper portions of Plaintiff's body, it is clear that Plaintiff is wearing boxer shorts. *Id.*, Ex. A. None of the pictures show any part of Plaintiff's genitalia. *Id.* And Plaintiff does not claim that any fully nude pictures were taken of him.

Accordingly, Defendant Patterson being "present" during the brief, visual unclothed body

15

search and taking pictures of Plaintiff in his underwear briefs for the purpose of documenting his tattoos did not render the scope and manner of the strip-search unreasonable.

### 2) Justification for the Search

With respect to the third *Bell* factor, Defendants assert that the search was justified. Dkt. 37 at 24-25. Defendants Brown and Salas have offered evidence showing that they believed Plaintiff possessed a cellular phone based on a tip, that cellular phones create a security threat as they could be used to facilitate illicit activity, and that it is common practice for inmates to hide such contraband in their pants or boxers. Brown Decl. ¶ 4; Salas Decl. ¶ 4; Rodriguez Decl. ¶ 5. In neither his verified complaint nor his opposition/declaration does Plaintiff produce evidence to contradict Defendants' showing. Further, Defendants offer evidence showing that such a strip-search in this situation would have been reasonable based on the prison's legitimate security interests. Specifically, Defendants show it is "common practice for inmates to manufacture pouches that they place close to their groin area to elude officers during quick pat-down of their outer clothing." Rodriguez Decl. ¶ 11. Defendants also show that "the benefit of an unclothed body search is that it enables officers to check for false compartments that might have escaped them during a clothed search." *Id.* And, thus, inmates may be subjected to an unclothed body search "for the purpose of maintaining prison safety and security," or, in this case, where there is reason to believe that an inmate has hidden contraband in his groin area. *Id.* ¶¶ 10-11. Again, Plaintiff fails to come forward with any evidence to dispute Defendants' showing. Moreover, the fact that the cell search later yielded two contraband cellular phones (and two chargers), *see* Salas Decl. ¶ 8; Brown Decl. ¶ 12, as predicted by the tip, establishes that the tip was credible. Plaintiff offers no argument in opposition.

With respect to the photographs, Defendants submit evidence that they were taken to document Plaintiff's tattoos. Patterson Decl. ¶¶ 10-11. Defendant Patterson states that tattoos "may be indicative of prison or street gang membership" and taking such photographs "is an essential part of [her] job responsibilities as an investigator who documents the inmates' STG status." *Id.* ¶ 10 (citing Cal. Code Regs. Tit 15, §§ 3378.1(b)(10), 3378.2(6)). Plaintiff does not dispute the aforementioned justifiable use of the photographs. Rather, Plaintiff argues in his

16

1    opposition that Defendant Patterson "did not follow a single policy of CDCR regarding [STG]
2    documentation." Dkt. 38 at 15. In their reply, Defendants argue that "the regulations about
3    documentation of STG activity do not provide Plaintiff with a Constitutional right to not have his
4    tattoos photographed, however." Dkt. 40 at 12. Defendants further argue that the "documentation
5    of the photography session—which occurred after the photographs were taken—has no bearing on
6    whether the photography itself was 'reasonable' or not." *Id.* The Court agrees with Defendants.
7    And to the extent that Plaintiff challenges that the reason his photographs were taken by accusing
8    Defendant Patterson of taking them "under the gui[s]e of [STG] issues," such an argument also
9    has no bearing on whether her actions were reasonable. As mentioned, Defendants assert that
10   prison officials may inspect and document an inmate's tattoos in order to monitor whether that
11   inmate has recently joined a gang. *See* Patterson Decl. ¶¶ 10-11. Any dispute over whether or not
12   Plaintiff was in fact a gang member at the time of the search is not material with respect to
13   whether the taking of the photographs was justified. The photographs would document the fact
14   that Plaintiff had no tattoos to indicate any new gang affiliation, which was the purpose of the
15   STG status investigation. Therefore, Defendants have shown the absence of a genuine issue of
16   material fact with respect to whether the search was justified.

### 3) Location of the Search

18   Lastly, Defendants assert that the location of the search was reasonable—it was conducted
19   early in the morning and in the shower area of the prison. Dkt. 37 at 25-26. In his opposition,
20   Plaintiff asserts that the unclothed body search was not conducted in a "private setting" but rather
21   in an "unsanitary public shower/floor area," and in the view of numerous inmates. Dkt. 38 at 13.
22   Meanwhile, Defendants have put forth evidence that the shower area is where such searches are
23   routinely conducted because it "ensure[s] that anyone who might have been on the second or third
24   tier could not have had a clear line of sight inside the shower area." Rodriguez Decl. ¶ 9. As
25   mentioned above, Defendants Brown and Salas also used their bodies to shield Plaintiff from the
26   view of Defendant Patterson and any other bystanders outside the shower while he was nude.
27   Brown Decl. ¶ 10; Salas Decl. ¶ 7. Although Plaintiff asserts generally that it was "unsanitary," he
28   fails to allege any specific facts to support this opinion. Accordingly, Defendants have shown the

absence of a genuine issue of material fact with respect to the reasonableness of the location of the search.

#### 4) Conclusion

Balancing the *Bell* factors above, the Court finds that Defendants have shown the absence of a genuine issue of material fact with respect to the reasonableness of the unclothed body search. The scope and manner and manner of the search, which was a visual, unclothed body search that lasted for approximately one minute, were reasonable. The presence of a female officer (Defendant Patterson) outside the showers but without a direct line of sight did not render it otherwise. The search was justified because it was based on a tip that Plaintiff was in possession of contraband which proved to be credible, and the photographs were taken for the legitimate purpose of documenting Plaintiff's STG status. Lastly, the location of the search in the shower area was reasonable because it was where such searches are routinely conducted and away from other inmates' direct line of sight. As such, Plaintiff has failed to meet his burden of showing that Defendants intentionally used exaggerated or excessive means to enforce security in conducting the unclothed body search. *See Thompson*, 111 F.3d at 700. Therefore, a reasonable jury could conclude that the search was reasonably conducted, and that it was reasonably related to the prison's legitimate penological interest in controlling contraband to maintain institutional security. *Id.*; *see, e.g., Bell*, 441 U.S. at 560; *Michenfelder*, 860 F.2d at 332-33.

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's Fourth Amendment claim regarding an unclothed body search. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

#### c. Supervisor Liability

Plaintiff's claim against Defendant Rodriguez is based solely on his role as a supervisor: he allegedly failed to supervise Defendants Brown's and Salas's strip-search or to prevent

Defendant Patterson's unconstitutional conduct. A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)); *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Here, the Court has determined that Plaintiff failed to allege that Defendants Brown's and Salas's search of his cell was unconstitutional. Secondly, as Defendants point out, there is no evidence to suggest that Defendant Rodriguez was obligated to personally supervise an ordinary search of an inmate and his cell. Dkt. 37 at 16-17. Furthermore, it is undisputed that Defendant Rodriguez was not present during the unclothed body search, nor are there any allegations that he personally directed the actions of Defendants Brown, Salas, and Patterson. Rodriguez Decl. ¶ 6. Lastly, since the Court has determined that these subordinate officers did not violate Plaintiff's Fourth Amendment rights during the unclothed body search, it cannot be said that Defendant Rodriguez is liable as a supervisor where no constitutional violation has occurred. Because Plaintiff has failed to show that there is genuine dispute of material fact with respect to Defendant Rodriguez's involvement in the unclothed body search at issue, Defendant Rodriguez is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## IV. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Because Plaintiff has failed to amend the claims against Defendants Kernan and Hatton, these claims will remain DISMISSED without leave to amend.

2. Defendants Brown's, Patterson's, Rodriguez's, and Salas's motion for partial dismissal and for summary judgment is GRANTED.[8]

3. The Clerk of the Court shall terminate all pending motions and close the file.

---

[8] The Court's finding that Defendants are entitled to summary judgment on the merits obviates the need to address Defendants' alternative arguments, including their motion to dismiss Plaintiff's claim for emotional distress damages, as well as their qualified immunity argument.

19

4. This Order terminates Docket No. 37.

IT IS SO ORDERED.

Dated: November 14, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge